IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| | : | |
| CHAD CHRISTOPHER BENHAM, | : | CASE NO. 10-73248 - MHM |
| | : | |
| DEBTOR. | : | |
| | : | |
| DONALD F. WALTON, | : | |
| UNITED STATES TRUSTEE, | : | |
| | : | |
| MOVANT. | : | |
| | : | |
| -vs- | : | CONTESTED MATTER |
| | : | |
| CHAD CHRISTOPHER BENHAM, | : | |
| | : | |
| RESPONDENT. | : | |

**UNITED STATES TRUSTEE'S AMENDED MOTION TO
DISMISS PURSUANT TO SECTION 707(b)**

NOW COMES Donald F. Walton, United States Trustee for Region 21, (the "United States Trustee"), through undersigned counsel, and respectfully moves this Court to enter an order dismissing this case pursuant to 11 U.S.C. § 707(b), and in support thereof, states as follows:

**I.    COURSE OF PROCEEDINGS AND STATEMENT OF FACTS**

1.

The Court has jurisdiction of this matter under 28 U.S.C. § 1334(a) and (b), 28 U.S.C. § 157(a) and (b)(1) and 28 U.S.C. § 151. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B). This motion is filed pursuant to 11 U.S.C. § 707(b)(3).

2.

On May 3, 2010, Chad Christopher Benham ("Debtor") filed a voluntary petition for relief under Chapter 7 of Title 11, United States Code. William J. Layng, Jr. was appointed Chapter 7 Trustee in this case and continues to serve in that capacity.

3.

The chapter 7 Section 341 meeting of creditors was held and concluded on June 9, 2010.

4.

Based upon a review of the Debtors' Bankruptcy Petition and Schedules D, E and F, as amended, the United States Trustee believes and, therefore, avers that the reported debts are primarily consumer in nature.

5.

Section 707(b)(3) provides that, in considering whether granting relief would be an abuse in a case in which the presumption of abuse does not arise or is rebutted, the Court shall consider whether the debtor filed the petition in bad faith or the totality of the circumstances of the debtor's financial situation demonstrates abuse.

6.

Federal Rule of Bankruptcy Procedure 1017(e)(1) provides that, except as provided in section 704(b)(2), a motion under section 707(b) be filed within 60 days after the first date set for the meeting of creditors under section 341(a) unless the Court, for cause, extends the deadline.

7.

The deadline for the United States Trustee to file a motion to dismiss this case pursuant to section 707(b)(3), and pursuant to an order of the court, is January 7, 2011. This motion is filed within the requisite time period and is timely.

8.

Pursuant to 11 U.S.C. § 704(b)(1)(a), the United States Trustee reviewed the materials filed by the Debtor and determined that this filing constitutes an abuse of the provisions of Title 11 pursuant to § 707(b)(3). The United States Trustee contends that the totality of the circumstances of Debtor's financial situation demonstrates abuse and, accordingly, moves the Court to dismiss this case.

9.

On September 21, 2010, the United States Trustee examined the Debtor pursuant to Federal Rule of Bankruptcy Procedure 2004. On November 29, 2010, the Debtor provided documentation of his non-filing spouse's separate expenses.

10.

On April 25, 2009, the Debtor married Suzanne Marsili.

11.

Prior to the marriage, the Debtor lived in a condominium located at 864 Charles Allen Drive, Atlanta, Georgia. As of the date of filing, the schedules indicate the value of the condominium was $135,000 and the Debtor owed $175,767.22.

12.

When the Debtor married, he moved into the residence owned by his non-filing spouse. The Debtor testified at the 2004 Examination that he is not obligated on the mortgage for the marital residence and does not pay any portion of the mortgage.

13.

The Debtor testified at the 2004 Examination that he stopped paying the mortgage on his condominium when he moved into the residence owned by his wife.

14.

The Debtor testified at the 2004 Examination that he filed his chapter 7 bankruptcy case because he could no longer afford to pay the mortgages and home owner's association dues associated with his condominium.

15.

In December 2009, the Debtor's non-filing spouse purchased a 2005 Mini Cooper to be the Debtor's primary vehicle. The 2005 Mini Cooper is owned solely in the name of the Debtor's non-filing spouse.

16.

The Debtor and his non-filing spouse do not have a prenuptial agreement.

II.     **STATEMENT OF APPLICABLE STATUTES AND RULES**

17.

A court may, pursuant to section 707(b)(1), dismiss a chapter 7 case (or, with the debtor's consent, convert it to chapter 11 or 13), filed by an individual with primarily

consumer debts, if it finds that granting relief would constitute an abuse of chapter 7. Abuse under section 707(b)(1) may be determined under two distinct and independent bases. First, pursuant to section 707(b)(2)(A)(i), a presumption of abuse may arise based on a mathematical analysis factoring in historic income (section 101(10A) "CMI"), statutory expense "[s]tandards," and select actual expenses. Second, if that presumption does not arise or is rebutted, a court may still determine a case abusive under section 707(b)(3). That section states as follows:

> (3) In considering under [section 707(b)(1)] whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(I) does not arise or is rebutted, the court shall consider -
>     (A) whether the debtor filed the petition in bad faith; or
>     (B) [whether] the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

11 U.S. C. §§ 707(b)(3)(A) and (B).

### III. DISMISSAL WITHOUT PRESUMPTION OF ABUSE

18.

The overwhelming majority of courts now hold that a debtor's ability to repay a portion of his or her unsecured nonpriority debt may constitute abuse under 11 U.S.C. § 707(b)(3). *See In re Walker*, 383 B.R. 830 (Bankr. N.D. Ga. 2008); *In re Henebury,* 361 B.R. 595, 607 (Bankr. S.D. Fla. 2007) ("Ability to pay, standing alone, is sufficient to warrant dismissal of a Chapter 7 case for abuse pursuant to 11 U.S.C. § 707(b)(3)(B)."); *In re Mestemaker*, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007) (the "plain language of §

707(b)(3), read in conjunction with § 707(b)(1) and (2), is clear and compels a conclusion that a court must consider a debtor's actual debt-paying ability in ruling on a motion to dismiss where the presumption does not arise or is rebutted"); *In re Lenton*, 358 B.R. 651 (Bankr. E.D. Pa. 2006) (same).

19.

The courts consider the debtor's ability to pay as of the date of the hearing on the motion to dismiss--not as of the date the debtor filed the petition. *In re Pennington*, 348 B.R. 647 (Bankr. D. Del. 2006); *In re Richie*, 353 B.R. 569 (Bankr. E.D. Wis. 2006). *Accord, Henebury*, 361 B.R. at 609.

20.

Section 707(b)(3) does not set forth a minimum monthly figure or percentage return at which a debtor's ability to pay would constitute abuse. However, "since the abuse threshold cannot be challenged with the means test, there is a clear policy judgment that the [section 707(b)(2)] threshold fixes the level at which debt-paying ability becomes abusive in chapter 7." *In re Mestemaker*, 359 B.R. 849, 858 (Bankr. N.D. Ohio 2007). Therefore, the "abuse threshold of section 707(b)(2) "is at least a helpful guideline to Congress's intention in giving content to the concept of abuse." *Id.*

21.

The abuse threshold under section 707(b)(2) is met if the debtor's current monthly income reduced by amounts determined under clauses (ii), (iii), and (iv) [of § 707(b)(2)(A)],

and multiplied by 60 is not less than the lesser of – (I) 25 percent of the debtor's non-priority unsecured claims in the case, or $7,025.00, whichever is greater; or (II) $11,725.

22.

Stated differently, if after deducting all allowable expenses from the debtor's current monthly income, the debtor has less than $117.08 per month in monthly net income (*i.e.*: less than $7,025.00 to fund a 60 month plan), the filing is not presumed abusive. If the debtor has monthly net income of $195.42 or more (i.e.: at least $11,725 to fund a 60 month plan), the filing is presumed abusive. Finally, if the debtor's monthly disposable income is more than $117.08 but less than $195.42, the case will be presumed abusive if that sum, when multiplied by 60 months, will pay 25% or more of the debtors' non-priority unsecured debts.

**A.    NET INCOME**

23.

Debtor reported on Schedule I that his household combined "net" monthly income is $6,917.47, including income from wages, salaries and commissions.

24.

Debtors' payroll deductions as reflected on Schedule I include a sum for retirement savings and contribution to a savings account. The United States Trustee submits that Debtor's payroll deduction sum for retirement contributions and savings should be counted toward his income. The Debtor should not be allowed to make voluntary retirement and savings contributions via payroll deductions at the expense of his creditors. *See, In re Parada,* 391 B.R. 492, 502 (Bankr.S.D.Fla. 2008); *In re Leung*, 311 B.R. 626, 631 (Bankr.

S.D. Fla. 2004) (holding that retirement contributions are not reasonably necessary); *In re Dorwarth*, 258 B.R. 293 (Bankr. S.D. Fla. 2001).

25.

The United States Trustee prepared a calculation of the Debtor's net income using the Debtor's and non-filing spouse's pay advices.[1]  The United States Trustee submits that the Debtor's net income on Schedule I should be increased by $938.27.  Using the amounts reflected on the pay advices and omitting the retirement and savings contributions, it appears that Debtor's aggregate monthly net income, properly stated, is not less than $7,855.74.[2]

**B.    BUDGETED EXPENSES**

26.

On Amended Schedule J, Debtor reported that his monthly household expenses total $7,108.33, including $2,058.33 for mortgage expenses, $780.00 for living expenses, and $1,300 for transportation expenses.

27.

Debtor's budgeted expenses as reflected on Amended Schedule J include $2,058.33 mortgage expenses.  The Debtor testified at the 2004 Examination that he does not pay any mortgage expenses.  The United States Trustee's alternate budget lists the mortgage expense for the Debtor's residence as a separate expense of his non-filing spouse.

---

[1] A copy of the comparative calculation of net income is attached as **Exhibit A**.

[2] Calculated by subtracting $2,471.31 (payroll deductions) from $3,314.18 (gross income), and adding the non-filing spouse's net income.

28.

Debtor's budgeted expenses as reflected on Schedule J include $780.00 for living expenses. The Debtor testified at the 2004 Examination that amounts listed for living expenses were the total for the household.

29.

The non-filing spouse's living expenses were included in the documentation of the non-filing spouse's separate expenses provided by the Debtor. The Debtor testified that he does not pay any of his non-filing spouse's living expenses. Accordingly, the United States Trustee reduced the amount of living expenses to the applicable IRS National Standard for a single debtor.

30.

Debtor's budgeted expenses as reflected on Amended Schedule J include $1,300 for transportation expenses. According to the Debtor's testimony at the 2004 Examination, the amounts listed on Amended Schedule J for transportation expenses include his non-filing spouse's transportation expenses.

31.

The non-filing spouse's transportation expenses were included in the documentation of the non-filing spouse's separate expenses provided by the Debtor. The Debtor testified at the 2004 Examination that he does not pay any of his non-filing spouse's transportation expenses.

32.

Included in the Debtor's transportation expenses is $300 for an automobile installment payment. The Debtor testified at the 2004 Examination that he pays his non-filing spouse's note on a 2005 Mini Cooper in exchange for his use of the vehicle. The Debtor is not obligated on the note secured by the 2005 Mini Cooper.

33.

Accordingly, the United States Trustee reduced the amount of transportation expenses to the applicable IRS National Standard for ownership and operation of one vehicle.

34.

The United States Trustee prepared a calculation of Debtors' budgeted expenses. That calculation is attached hereto as **Exhibit B**. The United States Trustee's calculation of a reasonable budget for Debtor eliminates living and transportation expenses separately accounted for in the line item labeled "Non-filing spouses's separate bills."

C.    **DISPOSABLE INCOME**

35.

Taking into consideration the foregoing, the United States Trustee prepared a calculation of Debtors' disposable income. A copy of the calculation of disposable income is attached as **Exhibit C.** Debtor's average monthly expenses as reflected on Exhibit B should be $6,385.39, resulting in a monthly disposable income of not less than $1,470.35. Debtor could pay at least $88,221 over 60 months. This would provide a distribution of approximately 416% on his scheduled $21,197.14 unsecured debt.

36.

The United States Trustee also provided a calculation of the approximate distribution to creditors should the Debtor include the scheduled deficiency on his surrendered condominium as unsecured debt. If the deficiency amount, as reflected by the Debtor's schedules, of $40,767.22 in included in the Debtor's unsecured debt, the Debtor's disposable income would provide a distribution of approximately 142% over 60 months. Upon information and belief, the Debtor's household will not have increased tax liability as a result of the surrender of the condominium because the household will continue to receive the benefit of the non-filing spouse's home mortgage interest deduction.

37.

Any income contributed to the Debtor's household by his non-filing spouse, excluding her separately documented expenses, should be counted toward the Debtor's disposable income. *See In re Lightsey*, 374 B.R. 377 (Bankr. S.D. Ga. 2007) (finding that alleged inequity of requiring debtor to convert case to one under chapter 13, in which debtor's current spouse would pay premarital debts, did not prevent dismissal of case).

IV.    **CONCLUSION**

38.

Debtor appears to enjoy a stable source of future income. Debtor is employed by Georgia Power, where he has been employed for approximately two years. The Debtor's non-filing spouse is employed as a business analyst at ADP, Inc., a position she has held for approximately five years.

39.

Debtor is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code.

40.

Debtor has the ability to make a substantial payment pursuant to a Chapter 13 plan.

41.

Debtor has not offered any evidence that the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment.

42.

Debtor is not needy.

43.

The granting of a discharge in this case would be an abuse of the bankruptcy process.

44.

The United States Trustee submits that in this case Debtor has the ability to pay a significant portion of his unsecured debt and the totality of the circumstances of Debtor's financial situation demonstrates that this chapter 7 filing constitutes an abuse under 11 U.S.C. § 707(b)(3).

45.

The Court should dismiss this case under Bankruptcy Code section 707(b)(1) for abuse under section 707(b)(3).

WHEREFORE the United States Trustee requests the Court dismiss this case and grant such other relief as the Court deems appropriate. If Debtor converts the case to chapter 13, the United States Trustee will request the Court hold the motion in abeyance, to be scheduled for hearing in the event Debtor re-converts the case to chapter 7.

Respectfully submitted this 7th day of January, 2011.

                                              DONALD F. WALTON
                                              UNITED STATES TRUSTEE
                                              REGION 21

                                              _____/s/_____
                                              Lindsay N. P. Swift
                                              Trial Attorney
                                              Georgia Bar No. 541621

**United States Department of Justice**
Office of the United States Trustee
362 Richard Russell Building
75 Spring Street, SW
Atlanta, Georgia 30303
404-331-4437, ext. 152
lindsay.n.swift@usdoj.gov

## CERTIFICATE OF SERVICE

  I certify that on January 7, 2011, I caused a copy of the foregoing motion to be served by first class, United States mail service, with adequate postage to ensure delivery to:

Chad Christopher Benham
362 East Side Avenue , SE
Atlanta, GA 30316

Debra L. McLean
McLean & Associates
Suite 1150
1800 Century Center
Atlanta, GA 30345

William J. Layng, Jr.
Pendergast & Jones, PC
South Terraces, Suite 1000
115 Perimeter Center Place
Atlanta, GA 30346

                /s/
              Lindsay N. P. Swift
              Trial Attorney